MALDONADO, PLAINTIFF AND APPELLEE, *v.* HAMILTON, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Ponce in an Action for Damages.

No. 2888.—Decided July 12, 1923.

DAMAGES—NEGLIGENCE—RIGHT OF ACTION—NATURAL CHILD. — Since the enactment of Act No. 77 of 1921, a mother who depended upon her natural son for support may recover damages for his death through the negligence of another, whether he was a minor or an adult.

ID.—ID.—HEIRSHIP—EVIDENCE—SELF-SERVING EVIDENCE. — When a mother sues for damages for the death of her son she need not first establish her status of heir under the Law of Special Legal Proceedings. That status may be pleaded and proved in the action for damages. The testimony of the mother and an uncle of the deceased given to prove that fact and not contradicted is sufficient and can not be considered as self-serving evidence.

ID.—ID.—EVIDENCE.—In an action for damages through negligence the plaintiff must show both the negligence of the defendant and the relation of cause and effect between the negligence and the injury.

ID.—ID.—ID.—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF. — The burden of proving contributory negligence, being a matter of defense, is on the defendant.

ID.—ID.—ID.—AUTOMOBILES—LICENSE OF DRIVER.—The mere fact that an automobile driver has not the statutory license at the time of killing a pedestrian

with his car will not make him liable for the damage caused, unless that circumstance had some connection with the cause of the death.

ID.—ID.—ID.—CONTRIBUTORY NEGLIGENCE.—The evidence for the defense not only showed that the deceased was not careful or cautious in crossing the road, but no prudence nor caution can be deduced from the circumstances of the accident. On the contrary, the evidence showed that the conditions in which the accident took place were such that if the deceased had exercised only ordinary care he could have avoided the accident.

The facts are stated in the opinion.

*Mr. Manuel F. Toro* for the appellant.

*Mr. D. Sepúlveda* for the appellee.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

This is an action for damages. On December 15, 1921, Eleuterio Maldonado was traveling in a motor bus in the direction from Santa Isabel to Ponce. The bus was stopped at a certain place on the right-hand side of the road and when the said Maldonado got out at the rear of the vehicle and attempted to cross the road he was struck by an automobile running in the opposite direction and seriously injured, dying shortly after the accident.

Alleging that she was the natural mother of the deceased and his sole and universal heir, the plaintiff brought the present action on the following grounds: That Maldonado was suddenly struck by the automobile driven by its owner, the defendant, who had no license to drive motor vehicles in Porto Rico and was driving at the time at an excessive rate of speed without sounding the horn or giving any other warning; that the defendant passed with his car very near the bus and did not take proper care or reasonable precautions for guaranteeing the safety of the lives of others; that as a result of the accident Maldonado was seriously injured and died a few hours later, and that owing to the death of Eleuterio Maldonado the plaintiff, who depended exclusively upon him for support, was deprived for the rest of her life of his pecuniary aid and suffered besides great physical pain and mental anguish.

The defendant. admitted the occurrence of the accident, but alleged that it was due solely and exclusively to the negligence and carelessness of the deceased.

The case was brought to trial and after evidence was examined by both parties the trial court rendered judgment allowing the plaintiff $3,000 as damages and the costs. An appeal was taken, assigning seven errors, two of which refer to questions of law and the others to the findings of the trial court.

First assignment. The opinion of the trial court holds that the plaintiff had a right to bring this action under section 61 of the Code of Civil Procedure, and the appellant maintains that the amendment of section 60 of the said code by Act No. 77 of July 20, 1921, is limited to natural mothers who seek to recover damages caused to a minor natural child; that is, that the amendment must be understood as referring strictly to section 60 and that as to section 61 the construction that this Supreme Court placed upon it in *Díaz* v. *P. R. Railway, Light & Power Co.,* 21 P. R. R. 73, must continue to prevail.

Apart from the fact that the Legislature expressed its intention clearly in amending section 60 of the Code of Civil Procedure, we believe that it was not necessary to make a similar amendment of the following section in treating of adults, inasmuch as section 61, in referring to heirs, must necessarily refer to the provisions of our general or substantive law in matters of inheritance, and, in accordance with section 913 of the Civil Code, as amended March 9, 1911, the natural father or mother succeeds the acknowledged natural child.

Second assignment. The precedents of this Supreme Court are adverse to the contention of the appellant. *Morales et al.* v. *Landrau et al.,* 15 P. R. R. 761. In cases of this kind it is not necessary first to establish the character of heir of a litigant in accordance with the Special Legal

Proceedings Act of March 9, 1905; therefore, such character may be pleaded and the proper evidence offered to establish it in the same action. On this point oral evidence was offered and not controverted, and we find nothing to indicate that the trial court arrived at an erroneous conclusion. The testimony of the plaintiff that she was the mother of the deceased and of a brother of hers to the same effect, which was not impeached, can not be considered as self-serving declarations and must be considered as the best basis for the conclusion reached by the trial court on that point

Third, sixth and seventh assignments. These three assignments may be considered jointly. The first discusses the finding of the trial court that the defendant was negligent; the second the contributory negligence of the decedent, which was not considered a good defense, and the third alleges that the trial court erred in concluding that the defendant was negligent for the simple reason that he had no license to drive automobiles in Porto Rico.

These assignments tend to establish that the court below committed manifest error in weighing the evidence examined, and from this point of view we are justified in reviewing the said evidence in order to be assured of the justice of the case. A rule that should be considered invariable in this class of actions is that the plaintiff must not only show the negligence of the person causing the damage, but also establish the causal relation between the negligence and the damage inflicted.

The accident in this case occurred in the presence of several witnesses. The deceased was traveling in a motor bus accompanied by his concubine, Cayetana Roche, and her son and the chauffeur and the conductor of the bus. These were the eye-witnesses and their testimony explains the circumstances of the case and determines the truth of the facts as they occurred.

In order to make out her case in relation to the rule

stated above the plaintiff relied on the testimony of Cayetana
Roche, the concubine of the deceased, who accompanied him
at the time of the accident, and on the fact that the defendant
had no license to drive automobiles in Porto Rico. But we
do not find that the testimony of Cayetana Roche alone
throws sufficient light on the occurrence of the accident to
establish clearly the defendant's negligence. She testified
that she was not looking at the very moment when the acci-
dent occurred; therefore, her other testimony can have the
effect of mere conjectures only. The essential part of her
testimony was as follows:

"Q.—Did you say that you found your husband lying face down-
ward on the road? A.—Yes. Q.—Near the bus? A.—In front of
the automobile. Q.—Near the bus? A.—No, the bus was here, a
little distant, and he was there; he was under the wheels of the
automobile. Q.—Did the automobile stop? A.—Yes. Q.—Did it
stop right there? A.—Yes. Q.—Where did the automoblie strike
him? A.—The only thing I could see was that it struck him here;
the rest I did not notice. Q.—Was the bus coming towards Ponce
on the right-hand side of the road? A.—Yes. Q.—Did you get out of
the bus and cross the road? A.—Yes. Q.—The automobile was
going from Ponce towards Guayama? A.—Yes. . Q.—Did you see the
lights of the automobile? A.—I saw them when it was near. Q.—
You were with your back towards it then? A.—Yes. Q.—What you
heard was the impact? A.—Yes. Q.—Was that the reason why you
turned around? A.—No, I turned around when I heard the noise.
Q.—Of the coming automobile? A.—Yes, because I was busy
untying a bundle to get out some money. Q.—And you heard the
noise of the coming automobile? A.—Yes, but not until it was very
near me, and I had to run. Q.—Was it very near? A.—Yes, very
near, and I was standing on the side of the road. Q.—Where was
the bundle? A.—In front of some sand piles. Q.—On the side of
the road; of the ditch of the road? A.—Yes. Q.—Was that where
the car struck your husband and pinned him under its wheels? A.—
Yes, I was untying the bundle and in the same motion in which I
attempted to turn around quickly I fell sidewise on the sand pile."

After this unsatisfactory testimony it was logical that the
only persons who could explain the facts were the chauffeur

and the conductor of the bus.    These eye-witnesses testified
that the defendant was driving his automobile slowly and
that they⁻ warned the deceased of the danger of the ap-
proaching automobile.    Their testimony greatly influences
the decision of this case.    Carlos Morales, chauffeur of the
bus, testified in part as follows:

"A.—Well, that afternoon we were coming from Pastillo towards
Ponce and at the Inabón bridge we found a woman, a man and a child
who signaled to the bus to stop, and as it was a passenger vehicle I
stopped it.    They said that they wished to ride—how far we did not
know—and when we arrived at Calzada the woman alighted, took out
the child and some bundles that they brought and put them on the
side of the road.    The man who was riding in the bus stayed in it
and gave me a dime for the fare, saying that as he knew me he
would give me something more later.    *    *    *    A.—He offered me
a dime, but as the trip was short I told him that he need not pay
anything and when he insisted I told the conductor to accept it and
he did.    When he stopped talking with us and started to get out
of the bus the lights of the car coming near the bus could be seen
and he was warned not to alight because an automobile was coming,
but he did get out and started across the road.    Q.—What happened to
him when crossing the road?    A.—The automobile struck him.    Q.—
Was this when he got out?    A.—When he got out of the bus on the
left side of it.    Q.—Was it night or day?    A.—It was dark already.
Q.—Did the car have lights?    A.—Yes.    Q.—Good lights?    A.—Yes.
Q.—Were they perfectly visible?    A.—Yes.    Q.—Was that part of
the road straight?    A.—Yes.    Q.—Did you hear the horn of the
automobile?    A.—It was almost inaudible; not very loud.    Q.—But
you heard the horn?    A.—Yes, it seemed to be a weak klaxon
*    *    *    Q.—Did he actually run?    A.—He tried to run when he
got out and attempted to cross.    Q.—What did he do?    A.—On
alighting he ran towards the other side, hurrying to cross in front
of the automobile."

The testimony of González Martínez, the conductor of the
bus, in its most material part, was as follows:

"Q.—Please tell the court in detail what you konw.    A.—We
were coming from Pastillo towards Ponce.    Beyond the Inabón
bridge some people signaled us to stop.    They were a man, a woman

and a girl. We stopped and they boarded the bus. Upon arriving at Calzada they asked us to stop. We stopped 'and the woman got out with the girl and put her on the side of the road. Then she came back for a bundle that they were carrying, took the bundle and put it there and stood waiting for the man. The man took out a dime to give us, but as the thing was not worth much, we told him he need pay nothing. He insisted so much that I took the dime; when he was about to get out I saw the automobile coming and told him not to do so because a car was coming, but he was so quick in getting out that the automobile struck him. Did the automobile have a light? A.—Yes. Q.—Were he lights visible? A.—Yes. * * * Q.—While he was speaking to you about the dime was he with his face towards the place from which the automobile was coming? A.—Yes. Q.—Could he see it perfectly? A.—He could see it. Q.—And when he turned to get out did he do so rapidly? A.—Yes. Q.—Then you called to him? A.—Yes. Q.—Did you call to him when he was about to alight. A.—Yes, when he was rushing off. Q.—Not when he was speaking to you? A.—No. Q.—When he was speaking to you could the glare of the automoblie be seen? A.—Yes.''

This is the testimony which explains the acts of the deceased at the very moment of the accident and shows that the carelessness and lack of precaution of the deceased brought about the unfortunate accident of his death. It is true that these witnesses could not say positively that the deceased heard the warning that they gave him of his danger and that one of them says that they shouted to him, but both of them saw the automobile coming at some distance, which drew their attention because of the glare of its lights and, as it approached the bus sounded the klaxon, which was heard by one of them, and for that reason they were perfectly aware of the danger and warned Maldonado of it.

It may be that the deceased could not hear because of the noise of the running motor of the bus, but it is to be presumed that he must have looked to see what others saw, as no abnormality in his eye-sight has been shown; therefore, he could have seen the glare of the lights of the auto-

mobile on the road, the intensity of which must have increased as the distance diminished in its approach to the place where the bus was standing. On this point turns the discussion about the contributory negligence charged by the appellant to the deceased, and from an examination of the authorities and the jurisprudence we have found that the most violent controversies have turned on the question of whether the plaintiff must prove that he is free from negligence or whether the burden is on the defendant to prove that the accident was due to the negligence of the plaintiff.

However, this court has already inclined to the rule that the burden of proving contributory negligence is on the defendant, and in accordance with that rule the following was said in *Rosado* v. *Ponce Railway & Light Co.*, 20 P. R. R. 528:

"In the first place, the burden of proving contributory negligence rests on the defendant. It is a matter of defense. This is the rule in the Supreme Court of the United States, in the Federal courts and in the courts of a majority of the states. This is a sounder rule than the one which throws the burden on the plaintiff and its soundness is approved by Thompson on Negligence, paragraph 366, and by other authors."

The same doctrine is insisted upon in the case of *González* v. *Malgor, Luiña & Co.*, 29 P. R. R. 97, where the following was said: "And in accordance with the jurisprudence laid down, 'the contributory negligence of the plaintiff is a defense which must be pleaded and proved by the defendant.'"

Although the question of whether a plaintiff exercised proper care is in form an affirmative proposition, this does not necessarily mean that it must be established by affirmative evidence directly offered for the purpose. It is a matter that may be inferred from the circumstances of each case. But in the present case not only does it not appear from the direct evidence of the plaintiff that the deceased was careful or cautious in crossing the road, but such care or caution

can not be inferred from the circumstances in which the accident occurred. On the contrary, the evidence shows that the conditions in which the accident occurred were such that if the deceased had exercised the most ordinary care he would have avoided it. If he could not hear the horn of the approaching automobile, or if he could not hear the warning of danger given by the chauffeur and conductor because of the noise of the motor of the bus, he must have seen, however, considering the darkness of the night, the glare of the lights of the approaching automobile, inasmuch as the witnesses testified that the deceased had his face towards the place whence the automobile was approaching, and especially as no sooner did he pay the conductor than he got out hastily and tried to run across the road. From all this it follows that he knew that the automobile was coming and attempted hurriedly to cross first. It is, therefore, impossible to suppose that the defendant was aware of the ignorance of danger on the part of the deceased in attempting to cross the road when the automobile was passing near the bus, or of his inability, if that were the case, to avoid the danger. We could not presume that the instinct of preservation of the deceased would be the only reason for saying that he acted with proper care, because inadvertence and lack of caution in accident cases are a negation of that presumption. The direct evidence or the circumstances are what can give us knowledge of the facts as they occurred, and in this case the fair impression made upon our conscience in reviewing the evidence as a whole is that the deceased crossed the road with knowledge of the danger and without giving the defendant time to discover and avoid it, if practically possible.

It would seem, however, that we should not have considered the conclusions at which we have arrived and have taken into consideration only the uncontroverted allegation

that the defendant at the time of the accident had no license for driving automobiles in Porto Rico. The appellee maintains that this omission was negligence *per se*. There is no doubt that subdivision (*a*) of section 5 of Act No. 75 "to regulate the operation of motor vehicles in Porto Rico, and for other purposes," approved April 13, 1916, prohibits the driving of a motor vehicle by any person who has not obtained a license therefor, and that the statute, by providing in subdivision (*b*) thereof the requisites that must be fulfilled for obtaining a license, was intended to secure and protect persons and property from accidents. But the point of view of the appellee is not conclusive because absolute. The consensus of opinion in the jurisprudence seems to establish the principle that the driving of an automobile without a license, in violation of the statute, is *prima facie* evidence of negligence, but if damages result from an accident there must appear a relation of cause and effect between the violation of the statute in that respect and the damage inflicted.

In the case of *Paz* v. *Bonet,* 30 P. R. R. 860, although there the facts that determined the defendant's liability were different, it was held, though incidentally, as follows:

"But if to this be added the fact that the driver was not licensed to operate the automobile, a fact which of itself would create liability in case of an accident towards the person injured, then it would result in the allegation of a fact which of itself establishes *prima facie* negligence and makes the defendant liable for the damage done."

Even in Massachusetts, which departs from the general rule that failure to register a motor vehicle is not considered as the proximate cause of damage and does not affect the right of action, the general rule is followed in cases involving the lack of a chauffeur's license that the absence of such a license can not be imputed as a ground of liability in case the vehicle causes damage to another, unless the lack of such a license has a connection with the accident because of the

unskilfulness of the chauffeur. Huddy on Automobiles, 5th ed., page 270.

The jurisprudence to that effect is voluminous. The citation by the appellee of the case of *Austin* v. *Rochester F. B. Co.*, 181 N. Y. Supp. 275 (1920), contains the soundest doctrine that we have been able to find. In that case it was said:

"The statutes requiring chauffeurs to be licensed was designed to protect the public against incompetent operators of cars, and the employment of an unlicensed chauffeur has therefore a bearing upon the exercise of the care which the defendant owed toward the plaintiff in the operation of its car. If a railroad company permitted a man not having an engineer's license to operate a limited passenger train, which came into collision with another train, it would be some evidence of the lack of proper care on the part of the company, to go to the jury upon the question of its liability. If a physician conducting a private hospital permitted a person not licensed as a surgeon to perform an operation, requiring professional skill, upon a patient, from which malpractice resulted, it would be some evidence of absence of due care on his part, to go to the jury upon the question of his liability. The evidence would not be conclusive, and might be wholly overcome by proof of competency, but neverthless, standing alone, it would call for an explanation and constitute *prima facie* negligence. So in this case the failure to employ a licensed chauffeur is some evidence of negligence, which may be overcome by subsequent evidence showing that, notwithstanding the fact that the chauffeur was not licensed, he was thoroughly competent, and was not responsible for the collision. It is not an immaterial question, like the failure to have a car license, which can have no possible bearing upon the operation of a car. The violation of the ordinance, therefore, is *prima facie* evidence of negligence, to be submitted to the jury in connection with the other facts in the case to determine the ultimate liability."

"There has been considerable discussion in the cases as to the liability for injuries to persons riding on the highway in an automobile which has not been registered as required by law, and some close distinctions have been sought to be drawn. It is, of course, a general principle of law that a person who does an unlawful act is not thereby necessarily put outside the protection of the law, and

merely because he is a lawbreaker he is not barred of redress for an injury which he may sustain, nor liable for an injury suffered by another. To put him beyond the pale of the law for the purposes of a recovery by or against him the unlawful act must have a connection with the injury suffered.'' 2 R. C. L. 1208.

''Mere failure of the driver of an automobile to have secured the statutory license at the time his machine injured a pedestrian on the highway will not render him liable for the injury, unless such failure had some causal relation to the injury.'' *Lindsay* v. *Cecchi*, 35 L. R. A. (N. S.) 699.

What facts or circumstances show the causal relation between the defendant's not having a license and the death of Maldonado? The reason given by the appellee is that if the defendant had obtained a license he would have received a copy of Act No. 75 and acted in accordance with its provisions. But such reasoning would have no more value than begging the question and might lead us to the absurdity that the mere fact of having a license should be considered *a contrario sensu* as a conclusive presumption of due diligence whatever the manner in which an accident may occur. Neither view is sound doctrine, for just as the mere possession of a license for driving automobiles does not give immunity to one who causes damage in an accident, so the contrary fact, or the lack of a license, does not of itself imply negligence but rather *prima facie* negligence subject to be controverted by evidence, or to other facts or inferences that may show the causal relation between the lack of a license and the accident. In this connection, and considering the evidence in this case, nothing indicates that the accident would have been different in form or in its effects if the defendant had had a license. The evidence has not convinced us that any of the other statutory regulations for driving automobiles was violated. The fact that the defendant could stop the automobile almost instantly after the collision, the body of the deceased being under the wheels, as witness Cayetana Roche put it, shows clearly the slow speed of the car. The

only doubt is whether the defendant actually sounded the horn. The chauffeur of the bus testified that he did, thus corroborating the testimony of the defendant that he sounded the horn to give warning of the approach of his car, and the fact that the automobile was going towards the bus when it stopped may be explained from the fact that on the opposite side there were some sand piles near which was Cayetana Roche tying some bundles, with her back to the scene of the occurrence.

All of these details, which we may consider as links in the chain of facts, do not establish any presumption of the incompetency of the defendant for driving his automobile, nor, therefore, the causal relation between his not having a license and the accident. Our conviction is rather that these details corroborate the testimony of the defendant that he is an engineer with experience in driving automobiles, for which he had been licensed in other states.

For the foregoing reasons the judgment must be reversed and substituted by another dismissing the complaint without costs.

*Reversed.*

Chief Justice Del Toro and Justices Wolf, Aldrey and Hutchison concurred.